FILED

2013 OCT 17 P 2:01

CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA

**IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF VIRGINIA**

**Ge Zhang**
a/k/a Emily Zhang
14420 William Carr Lane
Centreville, VA 20120

Plaintiff

**Case No.** 1:13CV1309-LO/JFA

**PROMONTORY INTERFINANCIAL NETWORK, LLC**
Suite 1200
1515 North Courthouse Road
Arlington, VA 22201

Defendant

**COMPLAINT**

COMES NOW Emily Zhang ("Plaintiff"), by and through undersigned counsel, and brings this action against Promontory Interfinancial Network, LLC ("Defendant" or "PIN"), and for grounds states as follows:

**Parties and Jurisdiction**

1. The Plaintiff is a natural person who herein proceeds individually on claims for retaliatory termination pursuant to (1) the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e *et seq.* ("Title VII"); (2) the Civil Rights Act of 1871, as amended, 42 U.S.C. 1981 ("Section 1981"); and (3) a common law claim for tortious interference with her at-will employment contract.

2. The Defendant is a corporation which maintains its principal places of business in Arlington, Virginia.

3. At all times relevant hereto, the Plaintiff was employed by the Defendant in Arlington, Virginia.

4. Pursuant to the preceding, this Court has proper personal jurisdiction over the Defendant; proper subject matter jurisdiction over the claims being brought pursuant to 29 U.S.C. 1331 (federal question jurisdiction for the federal claims) and 29 U.S.C. 1367 (supplemental jurisdiction for the state law claim); and proper venue over this action.

**General Allegations**

5. The Plaintiff commenced employment with Promontory InterFinancial Networks, LLC ("PIN"). on or about November 1, 2012 in the position of Senior User Experience Consultant and reporting directly to Mary Lynn Wilhite ("MW"), a Senior Web Development Manager.

6. The Plaintiff's primary responsibilities throughout her tenure of employment involved the development and design of the user interface component of the Bank Access Point software, an online software program which was under development within MW's group.

7. In December 2012, the Plaintiff was advised by MW that PIN management was pleased with her employment and wanted to discuss with her the idea of the Plaintiff converting from her status as a consultant to that of a direct full time employee of PIN. The Plaintiff responded that she would be interested in exploring this option.

8. In the latter part of January 2013, the Plaintiff met with PIN management for the purpose of discussing her change to direct employee status with PIN. At this meeting, an agreement was reached whereby the Plaintiff would (1) convert to the PIN payroll and be eligible for all PIN benefits, (2) be paid a salary of $120,000.00 for her first year of employment and $130,000.00 for her second year of employment, and (3) be eligible for bonus payments each year, with a guarantee that the Plaintiff would receive a total compensation package of at least $130,000.00 during her first year of employment with PIN. The Plaintiff was further advised that the terms of

this agreement would be memorialized in an offer letter which would be prepared over the next few days.

9. On the day the Plaintiff expected to pick up the offer letter, she was called into a meeting with PIN's Chief Administrative Officer. The CAO advised the Plaintiff that (1) the Plaintiff's comments about a web page which the Plaintiff had evaluated as being "confusing" could possibly hurt other people's feelings; (2) there had been reports of communication problems between the Plaintiff and the marketing team; (3) the Plaintiff may or may not have a communication problem and that, if she did, it needed to be improved and, if she did not, this discussion should be taken as a reminder; and (4) the Plaintiff's offer letter would be held for the time being to not only see how things went but also because PIN was going through a restructuring and recruiting a new product manager who would be closely working with the Plaintiff. At the end of the meeting, the CAO assured the Plaintiff that she was doing just fine and did not need to worry about her job.

10. On February 12, 2013, Simon Storm, the Plaintiff's second level manager and direct supervisor of MW, responded to an email from the Plaintiff and reassured her with respect to her job performance that "...you are doing fine, please don't worry."

11. On February 13, 2013, the Plaintiff met with PIN's Human Resources Director and lodged a complaint of discrimination and hostile working environment against MW and a co-worker based upon the Plaintiff being Chinese/Asian. The HRD's immediate reaction was to inform the Plaintiff that she must be mistaken. At the Plaintiff's insistence, the HRD agreed to investigate the Plaintiff's allegations.

12. As of February 13, 2013, the Plaintiff had never been formally disciplined concerning any aspect of her job performance, behavior, or interactions with others.

13. Between February 13 and February 25, 2013, the Plaintiff performed her job responsibilities in a competent or better manner.

14. Between February 13 and February 25, 2013, the Plaintiff complied with all rules of conduct and behavior.

15. Between February 13 and February 25, 2013, no complaints or concerns were raised about the Plaintiff from either managers or co-workers.

16. On February 25, 2013, the Plaintiff was summoned into a meeting with the HRD. The Plaintiff assumed that the purpose of the meeting was to discuss the results of the HRD's investigation of the Plaintiff's allegations of discrimination/hostile work environment. However, upon arrival, the Plaintiff was informed that she [the Plaintiff] was being given 1 month's notice that her services with PIN were being terminated. The Plaintiff questioned the HRD as to why she was being terminated shortly after she had reported her complaints of discrimination/hostile work environment, especially since she had excellent job performance and good relationships with her co-workers. The HRD responded that the termination had nothing to do with the Plaintiff's relationships with her co workers or her good job performance but, rather, was due to the Plaintiff's "culture problem." The Plaintiff then responded and asked whether the culture problem was due to the Plaintiff being Chinese. The HRD did not respond but simply told the Plaintiff that the decision had been made and to return to work.

17. Given the statement made to the Plaintiff as to why she was being terminated, the Plaintiff felt strongly that her termination was based upon discrimination and/or retaliation. As such, the Plaintiff spent a few minutes later that same day in browsing and printing out some information and complaint forms from the Equal Employment Opportunity Commission ("EEOC") and Arlington County Human Rights Commission ("ACHRC") websites so that she could educate

herself on the matter of employment discrimination. The Plaintiff also printed out some email correspondence reflecting the Plaintiff's good job performance.

18. Shortly thereafter on that same day, PIN's HRD gained knowledge of the Plaintiff's activities in printing out information and complaint forms from the EEOC and ACHRC.

19. Shortly thereafter, the Plaintiff received a call from her primary contact at Trusted QA, Inc. ("TQA"), the Placement Company which had placed the Plaintiff in her position with the Defendant, and was informed that she was to finish out the day and not return to PIN. When questioned as to the reason for this action, the Plaintiff was informed that it was because she had printed out material earlier that day.

20. As a result of being terminated from her position with PIN, the Plaintiff was terminated from her employment with TQA effective February 25, 2013 as TQA had no other available placements at that time for which the Plaintiff was qualified.

**Joint Employment Status**

21. On October 25, 2012, the Plaintiff entered into a written Temporary Employee Agreement ("Agreement") with TrustedQA, Inc. ("TQA"), a staffing and placement agency, whereby the Plaintiff would receive compensation and benefits in exchange for providing consulting services to a TQA client.

22. PIN was a TQA client and the Plaintiff's employment with PIN was pursuant to an agreement between TQA and PIN.

23. During the entire period of time in which the Plaintiff worked for PIN, the Plaintiff:

A. received all work direction and instruction from PIN;

B. was required to follow all work rules and requirements applicable to PIN employees;

C. was directly supervised by PIN employees;

D. was provided with supplies and materials from PIN;

E. performed her tasks on PIN's premises;

F. was scheduled by PIN with respect to her hours;

G. performed work which was part of PIN's regular business;

H. was subject to disciplinary action and removal by PIN.

**EEOC Filing**

24. The Plaintiff filed a charge of discrimination with the EEOC on or about March 19, 2013.

25. In this charge, the Plaintiff alleged, among other things, that she was terminated from her position with PIN in retaliation for having complained of discrimination/hostile working environment on February 13, 2013.

26. The Plaintiff was issued a Notice of Suit Rights, dated August 27, 2013, by the EEOC.

**Economic Damages**

27. Had the Plaintiff not been terminated from her position with PIN on February 25, 2013, she would have voluntarily continued to work for PIN either as a consultant or direct employee for some indefinite period of time.

28. Had the Plaintiff not been terminated from her position with PIN on February 25, 2013, PIN would have continued to employ her as either a consultant or direct employee for some indefinite period of time.

29. Throughout her entire tenure of employment, the Plaintiff was scheduled for at least 40 hours/week and was paid $67.00/hour for each hour worked, including hours of 40/week.

30. Throughout her entire tenure of employment, the Plaintiff participated in the following benefits plans: medical insurance for herself only at a cost of $90.79 /pay period, dental insurance for herself only at a cost of $10.92/pay period, and a 401(k) plan.

31. Following her termination from employment, the Plaintiff received notice pay through 3/25/13.

32. Since the Plaintiff's termination from employment, she has not earned any income.

**Non-economic Damages**

33. The Plaintiff's termination from employment, resulting in a substantial decrease in the Plaintiff's income, is a cause of significant stress, especially since the Plaintiff is a single mother supporting a child.

34. The Plaintiff's termination from employment itself is a cause of significant distress and embarrassment to the Plaintiff as well as a blow to her self-esteem.

35. As a result of the above, the Plaintiff suffers difficulty in sleeping, headaches, and lack of energy.

36. As a result of the above, the Plaintiff has gained weight.

37. As a result of the above, the Plaintiff experiences periods of anger and depression.

38. As a result of the above, the Plaintiff has lost interest in daily activities.

39. As a result of the above, the Plaintiff avoids family and friends.

**COUNT I**
**Retaliatory Termination in violation of Title VII**

40. The Plaintiff asserts and realleges each and every allegation made in paragraphs one through thirty-nine as if fully set forth herein.

41. The Plaintiff suffered an adverse employment action when she was terminated from her position with the Defendant.

42. The Plaintiff engaged in protected opposition conduct when she lodged her complaint of discrimination and hostile working environment with the Defendant on February 13, 2013.

43. The Plaintiff, in good faith, genuinely believed that she was being subjected to discrimination based upon her race (Chinese) by her supervisor and co-employee at the time she filed her complaint with the Defendant on February 13, 2013.

44. The Plaintiff was unlawfully terminated from employment because she engaged in this protected opposition conduct on February 13, 2013.

45. The Defendant and TQA were, at all relevant times, joint employers of the Plaintiff. As such, the Defendant is liable for its unlawful retaliatory action when it removed the Plaintiff from her position with them because she had engaged in protected opposition conduct.

46. Alternatively, even if the Defendant is not found to have been a joint employer of the Plaintiff, the Defendant would still be liable for unlawfully interfering with the Plaintiff's employment relationship with TQA when it removed the Plaintiff from her position with them because she had engaged in protected opposition conduct, resulting in the Plaintiff being terminated from employment by TQA.

47. The Defendant qualifies as an employer pursuant to 42 U.S.C. § 2000e(b).

48 . The Plaintiff has satisfied all Title VII statutorily required pre-requisites for bringing suit under Count I.

49. As a result of its unlawful actions, the Plaintiff has suffered, and continues to suffer, both economic and non economic damages.

50. The Defendant's unlawful actions were done intentionally in direct disregard to the Plaintiff's known statutory rights.

**WHEREFORE**, Plaintiff demands judgment against the Defendant as follows:

A. A declaration that the acts complained of constitute a violation of Title VII of the Civil Rights Act of 1964, as Amended;

B. Lost wages and benefits from date of termination through date of trial;

C. Non-economic compensatory damages;

D. Punitive damages;

E. Reinstatement into a comparable position if in fact the Plaintiff is not employed in a comparable position as of date of trial;

F. In lieu of reinstatement, future lost wages from date of trial until date comparable employment is obtained;

G. Reasonable attorney's fees and costs;

H. Prejudgment interest;

I. Such other and further relief as deemed appropriate by this Court.

**COUNT II**
**Retaliatory Termination in violation of Section 1981**

51. The Plaintiff asserts and realleges each and every allegation made in paragraphs one through fifty as if fully set forth herein.

52. The Defendant's decision to terminate the Plaintiff in retaliation for engaging in protected opposition conduct constitutes a violation of 42 U.S.C. § 1981.

**WHEREFORE**, Plaintiff demands judgment against the Defendant as follows:

A. A declaration that the acts complained of constitute a violation of Section 1981;

B. Lost wages and benefits from date of termination through date of trial;

C. Non-economic compensatory damages;

D. Punitive damages;

E. Reinstatement into a comparable position if in fact the Plaintiff is not employed in a comparable position as of date of trial;

F. In lieu of reinstatement, future lost wages from date of trial until date comparable employment is obtained;

G. Reasonable attorney's fees and costs;

H. Prejudgment interest;

I. Such other and further relief as deemed appropriate by this Court.

**COUNT III**

**Tortious Interference with Plaintiff's At-Will Employment Contract**

53. The Plaintiff asserts and realleges each and every allegation made in paragraphs one through fifty-two as if fully set forth herein.

54. The Plaintiff had entered into a valid employment at will employment contract with TQA.

55. The Defendant at all relevant times had knowledge of the Plaintiff's employment relationship with TQA.

56. The Defendant intentionally interfered with the Plaintiff's employment relationship with TQA when it terminated Plaintiff from her position with the Defendant, resulting in TQA terminating the Plaintiff's employment.

57. The Defendant's interference was through the use of improper methods as it took an unlawful action in retaliating against the Plaintiff for engaging in protected opposition conduct.

58. As a result of this tortious interference, the Plaintiff suffered, and continues to suffer, both economic and non economic harm.

59. The Defendant's conduct was intentional and calculated to cause injury to the Plaintiff.

**WHEREFORE**, Plaintiff demands judgment against the Defendant as follows:

A. Lost wages and benefits from date of termination through date of trial;

B Non-economic compensatory damages;

C. Punitive damages;

D. Reinstatement into a comparable position if in fact the Plaintiff is not employed in a comparable position as of date of trial;

E. In lieu of reinstatement, future lost wages from date of trial until date comparable employment is obtained;

F. Prejudgment interest;

G. Such other and further relief as deemed appropriate by this Court.

**DEMAND FOR JURY**

The Plaintiff demands a trial by jury for all issues raised in this Complaint which are so triable.

Respectfully Submitted

Mitchell I. Batt, Bar No. 37574
Sullivan, Talbott, & Batt
77 South Washington St., Suite 304
Rockville, Maryland 20850
301-340-2450 Ext. 13
Mbatt@verizon.net